**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X


**GOWANUS INDUSTRIAL PARK,        INC.,**

                          **Plaintiff,**                          **06cv0105 (SJ) (JO)**

        **- against -**

**ARTHUR H. SULZER ASSOCIATES, INC.,**

                    **Defendant.**

-----------------------------------------------------------------X



**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RULE 56 MOTIONS**




James M. Maloney (JM-5297)
Attorney for Defendant
33 Bayview Avenue
Port Washington, NY 11050

(516) 767-1395

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

INTRODUCTION AND SUMMARY OF ARGUMENTS . . . . . . . . . . . .  2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

      POINT I

      ANY *IN PERSONAM* CLAIMS WOULD HAVE BEEN
      AVAILABLE SOLELY AS AGAINST CDS, WHICH HAS BEEN
      DISCHARGED IN BANKRUPTCY . . . . . . . . . . . . . . . . . . . . . .  10

      POINT II

      PLAINTIFF HAS ASSERTED NO *IN REM* CLAIM AGAINST
      THE BARGE, WHICH WOULD BE THE ONLY LEGAL BASIS
      FOR CLAIMS FOR "NECESSARIES" RENDERED TO THE
      VESSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

      POINT III

      PLAINTIFF HAS NO *QUANTUM MERUIT* CLAIM UNDER
      EITHER THE LAW OR THE FACTS . . . . . . . . . . . . . . . . . . . . .  13

      POINT IV

      PLAINTIFF WRONGFULLY WITHHELD THE BARGE TO
      DEFENDANT'S DETRIMENT, AND IS ACCORDINGLY
      LIABLE FOR SOME DAMAGES ON THE COUNTERCLAIM . . . .  15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of Defendant's Rule 56 motion for summary judgment dismissing the Plaintiff's claim, and in support of Defendant's accompanying motion for partial summary judgment as to liability (but not damages) in connection with Defendant's counterclaims against Plaintiff.

Filed contemporaneously with the papers in support of these motions are the papers in support of Defendant's Rule 11 motion, served April 4, 2006, consisting of a declaration with exhibits and a memorandum of law.  It is noted that Exhibit 1 to the Rule 11 declaration consists of the state-court complaint, which has not subsequently been amended.  Since that exhibit and others that may be necessary or useful to the Court's decision are thus being filed contemporane-ously with these motion papers on the companion Rule 56 motions, the complaint is not being reproduced and submitted separately.

Submitted herewith in support of the Rule 56 motions are separate Rule 56.1 statements, one submitted exclusively in connection with the motion for summary judgment dismissing the Plaintiff's claim, and another, shorter statement, cumulative to the first, submitted in connection with the motion for partial summary judgment as to Defendant's counterclaims.

<u>INTRODUCTION AND SUMMARY OF ARGUMENTS</u>

Defendant moves for summary judgment in its favor as to Plaintiff's claim on the following bases: (1) any *in personam* claims would have been available solely as against CDS Marine Construction, LLC ("CDS"), which has been discharged in bankruptcy, *see* ¶¶ 1-2 and Exhibits 1-2 of Rule 56.1 Statement, and, as Plaintiff has admitted, Plaintiff never filed a Proof of Claim in the CDS bankruptcy proceeding, *see* ¶ 3 and Exhibit 3 of Rule 56.1 Statement; (2) Plaintiff has asserted no *in rem* claim against the barge, which would be the only legal basis for claims for "necessaries" rendered to the vessel, *see* Complaint (Exhibit 1 to the Declaration of James M. Maloney dated April 4, 2006, filed contemporaneously herewith); (3) as Plaintiff has admitted, the parties have no contractual relationship, *see* ¶ 5 and Exhibits 4-5 of Rule 56.1 Statement; and (4) the equitable doctrine of *quantum meruit* is unavailable, because: (a) it is inapplicable as a matter of law in this admiralty/bankruptcy context (*see infra*); (b) the fair market value of the benefits Plaintiff received from the presence of the Barge ADA (and the work CDS performed with it, for which CDS was never paid) exceeds the fair market value of any costs it incurred in docking the barge, *see* ¶¶ 4, 7, and Exhibits 4, 7 of Rule 56.1 Statement; (c) the doctrine of "unclean hands" precludes such equitable relief (Plaintiff, for one thing, refused to allow

Defendant access to its barge for inspection or removal, and, for another, grossly inflated its claim, *see* ¶ 6 and Exhibit 6 of Rule 56.1 Statement); and (d) Defendant, even more so than Plaintiff, has suffered losses as a result of the CDS bankruptcy (*see* ¶ 8 of Rule 56.1 Statement).

Although the motion to dismiss Plaintiff's claims may properly be made as a 12(c) motion, discovery has been completed in this case, and there are matters outside the pleadings that strengthen Defendant's position. Accordingly, the motion is made as a Rule 56 motion for summary judgment.

Summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Id.* Here, Defendant is entitled to judgment as a matter of law as to Plaintiff's claims, because there is no genuine issue as to any material fact that could form a legal basis for Plaintiff's claims. As to Defendant's counterclaims (set forth at Exhibit 2 to the Declaration of James M.

Maloney dated April 4, 2006, filed contemporaneously herewith), there may be

genuine issue as to some material facts relating to the quantum of damages, but

Plaintiff's having intentionally withheld the barge from its registered owner as

"security"--prohibiting Defendant even from gaining access to the barge in order

to inspect it, mitigate damages, and prevent possible environmental harm--

removes any dispute that Defendant is entitled to compensation for loss of use of

the barge and for any physical damage that occurred during that period.

## STATEMENT OF FACTS

In mid-2000, pursuant to a demise or "bareboat" charter party, Defendant

ARTHUR H. SULZER ASSOCIATES, INC. chartered the Barge ADA to CDS

Marine Construction, LLC ("CDS"). Exhibit 1 to Rule 56.1 Statement.  In or

about November 2002, Defendant stopped receiving hire payments from CDS,

and, on July 17, 2003, commenced an action against CDS in the Eastern District

of Pennsylvania to recover the barge, the whereabouts of which were unknown to

Defendant at the time, and to recover payments under the charter party.  Exhibit

4 to the Declaration of James M. Maloney dated April 4, 2006, filed

contemporaneously herewith, at pages 06-0105-004 through  06-0105-015.

Unknown to Defendant at that time, CDS had filed for bankruptcy in the District

of New Jersey, and in July 2004, CDS was discharged in bankruptcy, thereby rendering Defendant's Eastern District of Pennsylvania an exercise in futility. *See* Exhibit 1 to Rule 56.1 Statement (decree at final page).  As Defendant learned much later, the Barge ADA was at Plaintiff's Brooklyn facility, where it had been used to perform services for Plaintiff, but for which Plaintiff never paid CDS.  Paragraphs 4, 7, and Exhibits 4, 7 of Rule 56.1 Statement.  Plaintiff never filed any Proof of Claim in the CDS bankruptcy proceeding, ¶ 3 and Exhibit 3 of Rule 56.1 Statement, but  Schedule B (Accounts Receivable) to the CDS bankruptcy petition listed GOWANUS INDUSTRIAL PARK (Plaintiff herein) as the source of an account receivable in the amount of  $27,280.  Paragraphs 4, 7, and Exhibits 4, 7 of Rule 56.1 Statement.  Plaintiff initially stated, in its April 11, 2006, response to document requests (Exhibit 3 to Rule 56.1 Statement) that it had "no knowledge of any account receivable claimed by CDS," but later recanted, as indicated by the following information elicited at the deposition of John Quadrozzi, Jr., Plaintiff's President (page 39, lines 8-14, excerpt annexed as part of Exhibit 4 to Rule 56.1 Statement):

> Q. It [Schedule B to the CDS bankruptcy petition] says "line
> 15. Accounts receivable," and listed there in that box, at the very
> bottom are four lines. It says, "Gowanus Industrial Park, $27,280."

Do you have any idea what that means?

A. I believe she [Kathy Young, principal of CDS] invoiced us

for some of that work, so perhaps that's the number.

Thus, while Plaintiff failed to put in any Proof of Claim for the very claims

it is, in this action, seeking to recover from Defendant (with which it has no

contractual relationship, *see* ¶ 5 and Exhibits 4-5 of Rule 56.1 Statement), it also

failed to pay CDS for services that CDS performed to Plaintiff's benefit using

two crane barges, one of which was the very barge for which Plaintiff now seeks

docking fees!  Paragraphs 4, 7, and Exhibits 4, 7 of Rule 56.1 Statement.

Plaintiff had begun invoicing CDS--never Defendant--for such charges in July

2003, *see* Exhibit 4 to Rule 56.1 Statement, and continued invoicing CDS

through and beyond the latter's discharge in bankruptcy, and indeed beyond the

date when the barge was removed from Plaintiff's waterfront property.  *See*

Exhibit 2 to Rule 56.1 Statement (invoices).  Plaintiff then brought this action in

state court--against Defendant individually but not *in rem* against the barge--

seeking to recover some $489,550 for "services" allegedly rendered to not one

but *three* barges, two of which had and have no connection whatsoever to

Defendant.  *See* Complaint (Exhibit 2 to the Declaration of James M. Maloney

dated April 4, 2006, filed contemporaneously herewith); *see also* Plaintiff's

initial disclosures in this action setting forth damages at $489,550.18 (contained in Exhibit 6 to Rule 56.1 Statement).   When that failed, Plaintiff reduced its claim to $137,223.21, i.e., 28% of Plaintiff's initial claim, *see* Exhibit J to the first deposition of John Quadrozzi conducted on August 17, 2006 (generated by Plaintiff; also (contained in Exhibit 6 to Rule 56.1 Statement), but even that amount is based on a grossly inflated daily docking fee of $116 per day for "unauthorized" docking that was not arrived at by any negotiation and was far above market value.   As elicited at Mr. Quadrozzi's deposition (page 111, lines 3-23, excerpt annexed as part of Exhibit 6 to Rule 56.1 Statement):

Q.  Was this price negotiated with anyone?

. . . . . . . .

A.  I said it was a higher rate for unauthorized dockage.

Q.  If it had been authorized docking, what would the rate have been?

A.  It would probably be less than that.

Q.  How about a number?

A.  I don't know.

Q.  It would have been negotiated?

A.  Exactly.  It would have been understood.

Q.  So one-way negotiation you can go anywhere.  116 [dollars per day for docking] is a very high number here you're stating?

A.  Perhaps.  Unauthorized things usually have greater expense tied to them.

Q.  And you sent these invoices to the address of the customer shown on them [*i.e.*, CDS], 510 Heron Drive in Swedesboro, New Jersey?

A.  Yes.

Meanwhile, as Plaintiff was invoicing CDS even after the latter had filed a bankruptcy petition and been discharged, Defendant, having learned of the CDS bankruptcy proceeding after independently suing CDS in another District, was able to explore leads on the location of the Barge ADA gained from the Trustee. By at least as early March 2004, although Defendant had not yet learned of the exact physical location of the ADA, communication between the corporate entities that are now the parties to this lawsuit had begun, and Defendant had, through counsel, demanded the release of the barge, which, as Plaintiff has expressly admitted, it refused to do (see responses to Notices to Admit, annexed as Exhibit 9 to Rule 56.1 Statement as to Counterclaims (exhibits numbered cumulatively from main  Rule 56.1 Statement)).  Indeed, Plaintiff would not permit Defendant to inspect or otherwise gain access to the barge at all, *see*

deposition excerpts at Exhibit 9 to Rule 56.1 Statement, thereby causing the potential for environmental harm, obstructions to navigation, and consequent serious liability to Defendant should the barge break loose and/or sink. Finally, Defendant, after investigating further to pinpoint the exact location of the barge and after exploring prohibitively costly possibilities of having his own vessel arrested, resorted to self-help in October 2005 by causing a tug to approach the barge from the water and remove it without trespassing on Plaintiff's property or damaging the other barge to which Defendant's barge was tied. Plaintiff retaliated by commencing this lawsuit in state court, which was removed to this Court by Defendant in January 2006.

ARGUMENT

POINT I

ANY *IN PERSONAM* CLAIMS WOULD HAVE BEEN AVAILABLE SOLELY
AS AGAINST CDS, WHICH HAS BEEN DISCHARGED IN BANKRUPTCY

As Defendant has asserted in the Rule 11 memorandum of law served in

April 2006 and filed herewith, it is "hornbook law" that claims against a

bankrupt are discharged in bankruptcy.  Plaintiff invoiced CDS--not Defendant--

repeatedly, and did so before, during, and after CDS's bankruptcy, but Plaintiff

neither filed a Proof of Claim nor paid CDS (or, later, the bankrupt's estate) for

the work CDS performed to Plaintiff's benefit using the very barge at issue here.

Plaintiff has now brought an *in personam* action against Defendant, with

whom it has no contractual relationship whatsoever, seeking to recover on the

invoices that it sent to CDS.

As a further, tangentially related matter, while a bankruptcy court has wide

discretion to allow or disallow the late filing of proofs of claim, *see, e.g.,*

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380

(1993), the conclusion of the bankruptcy proceeding with CDS's discharge in

July 2005 renders Plaintiff's failure to file a Proof of Claim or otherwise

intervene in that proceeding final there and dispositive here, for while a plaintiff

-10-

need not file a proof of claim in order to bring a civil action to collect from the debtor's insurance company because failure to file a proof of claim bars a plaintiff only from asserting rights against the estate and from participating in a reorganization plan, Defendant here is not CDS's insurer and would have had no liability for debts incurred while CDS, as demise charterer, had exclusive control of the barge. *Cf. Hawxhurst v. Pettibone Corp.*, 40 F. 3d 175, 179-180 (7th Cir. 1994); *In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 733-34 (7th Cir. 1991) (creditor permitted to proceed nominally against debtor, despite creditor's failure to file proof of claim, in order to obtain proceeds of debtor's insurance policy after warehouse fire destroyed creditor's equipment).

    Accordingly, this *in personam* claim must fail as a matter of law.

POINT II

PLAINTIFF HAS ASSERTED NO *IN REM* CLAIM AGAINST THE
BARGE, WHICH WOULD BE THE ONLY LEGAL BASIS FOR CLAIMS

Although an *in rem* claim against the barge--arising out of admiralty

jurisdiction and coincident with a maritime lien giving rise to the barge's arrest--

would *not* be discharged in bankruptcy, *see, e.g.*, *Dewsnup v. Timm*, 502 U.S.

410, 416 (1992), Plaintiff has never even attempted to meet the jurisdictional

prerequisites and has failed to make out an *in rem* claim against the vessel.  *See*

cases cited at page 8 of the Rule 11 memorandum of law served in April 2006

and filed herewith.

As the Second Circuit recently wrote:

> [R]ule D of the Supplemental Rules for Certain Admiralty
> Claims requires that in order to maintain an *in rem* admiralty action
> against a vessel, the vessel generally must be arrested. Because
> [plaintiff] did not post the bond required by the trial court, the court
> did not arrest the vessel and therefore lacked jurisdiction over the
> vessel *in rem*.

*Dluhos v. The Floating and Abandoned Vessel Known as "New York*," 162

F.3d 63, 66 (2d Cir. 1998).  Here, there has been no arrest of the Barge ADA,

even though Plaintiff had possession of the barge and ample opportunity to arrest

it for a considerable length of time.  Accordingly,  there is no colorable claim

under law that has survived the discharge in bankruptcy of CDS and that has been asserted herein.

POINT III

PLAINTIFF HAS NO *QUANTUM MERUIT*
CLAIM UNDER EITHER THE LAW OR THE FACTS

Courts in admiralty generally do not allow claims against a registered owner for the actions of the disponent owner. *see, e.g., Otto Wolff Handelsgesellschaft v. Sheridan Transportation Company*, 800 F.Supp. 1359, 1993 A.M.C. 406 (E.D.Va. 1992). Here, Plaintiff's claims were made against CDS Marine, the disponent owner of the barge under a charter, who brought the barge to Plaintiff's facility to do work there and in fact performed some work using the barge, listing Plaintiff as a creditor when it (CDS) later filed for bankruptcy. Plaintiff admits that it benefitted from the work of CDS Marine using the barge and that it never paid CDS Marine for that work. Further, Plaintiff has grossly inflated the claim for docking fees, has provided no basis for the rates reflected in the invoices to CDS Marine, and has wrongfully withheld the barge as "security." Accordingly, its equitable claim under a *quantum meruit* theory, even if it were available under the law in the first instance, would be barred by the doctrine of unclean hands and/or by a balancing of the equities,

-13-

since Defendant has lost a great deal more than has Plaintiff as a result of the CDS bankruptcy.

Even if *quantum meruit* were available here--which would be antitehtical to basic principles of both admiralty law and bankruptcy law--its principles would still be governed by state law.  Under New York law, the law is as follows: "In order to make out a cause of action in *quantum meruit* or *quasi* contract, a plaintiff must establish (1) the performance of services in good faith; (2) the acceptance of those services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services." *Landcom, Inc. v. Galen-Lyons Joint Landfill Comm'n*, 259 A.D.2d 967, 968, 687 N.Y.S.2d 841, 842 (N.Y.App. Div. 4th Dep't 1999) (concluding that the plaintiff had failed to establish that it performed services with the expectation that it would be compensated); *accord In re Alu*, 302 A.D.2d 520, 520, 755 N.Y.S.2d 289, 290 (N.Y.App. Div.2d Dep't 2003) (noting that "[t]he question of whether a party had a reasonable expectation of compensation for services rendered is a matter for the trier of fact to determine based on the evidence before it"); *Freedman v. Pearlman*, 271 A.D.2d 301, 304, 706 N.Y.S.2d 405, 408 (N.Y.App. Div. 1st Dep't 2000).  Here, Plaintiff clearly fails on prongs (2), the acceptance of those services by the person to whom they are

-14-

rendered, and (4), the reasonable value of the services.

Accordingly, Plaintiff's action, failing as a matter of law on any theory, must be dismissed.

POINT IV

PLAINTIFF WRONGFULLY WITHHELD THE BARGE TO<br>DEFENDANT'S DETRIMENT, AND IS ACCORDINGLY<br>LIABLE FOR SOME DAMAGES ON THE COUNTERCLAIM

By at least as early March 2004, although Defendant had by then not yet determined the exact physical location of the ADA, communication between the corporate entities that are now the parties to this lawsuit had begun, and Defendant had, through counsel, demanded the release of the barge, which, as Plaintiff has expressly admitted, it refused to do (see responses to Notices to Admit, annexed as Exhibit 9 to Rule 56.1 Statement as to Counterclaims (exhibits numbered cumulatively from main Rule 56.1 Statement)).  Indeed, Plaintiff would not permit Defendant to inspect or otherwise gain access to the barge at all.  As elicited at Mr. Quadrozzi's deposition (pages 48-52, excerpt annexed as part of Exhibit 9 to Rule 56.1 Statement on Counterclaim):

> Q. Back to this letter which is Defendant's Exhibit F. I'm not going to take you through it line by line and burden you with that, but it appears to indicate there was a dispute about the barge ADA between the plaintiff

and the defendant in this case.  From your perspective, what was that
dispute?  What was the problem?

A. Between -- between the people that own ADA and Donna --

Q. And GIP.

A. Kathy Young? [*i.e.*, CDS]

Q. No Kathy Young's out of the picture.  Take a look at this letter.
You'll see that it refers to a dispute between Gowanus Industrial Park and
the owners of the ADA.

A. Uh-huh.

Q. And this was in the time frame of May 2004.

A. Okay.

Q. What was the nature of that dispute?

A. As far as I recall, they [Defendant herein] didn't want to pay the
charges that were incurred on the barge.

Q. Did they want their barge back?

A. I believe so.

. . . . . . . .

Q. Let's go back to the time frame of this letter. You're not sure if
you were in touch with Kathy Young at this point but you were aware that

-16-

somebody else other than Kathy Young was trying to take this barge. Is that correct?

A. Yes.

Q. And your position was that you did not want to release the barge to that other party?

A. Without payment, yes.

Q. So you were holding the barge in exchange for payment on your claims?

A. That's your interpretation but I wanted to get paid.

Q. And you wouldn't release the barge until you got paid?

A. I don't know if it's a matter of release, but somebody wanted to enter the property and we prohibited them from entering the property because they had no business to be there.

Q. If they were the owner of the barge, would you agree that they had a right to inspect their barge?

MR. PAYKIN: Objection.

A. No.

MR. MALONEY: Can he answer? I think he did already. . . .

-17-

It is thus beyond dispute that, after Defendant had appeared and sought to take back his barge--or even to have a look at it--Plaintiff actively prevented Defendant from doing either.   In its counterclaims, Defendant has made the following pleadings:

### AS AND FOR A FIRST COUNTERCLAIM

38. Defendant repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 37 as if fully set forth herein.

39. Defendant was wrongfully deprived of hire at the reasonable daily rate of $750 per day for the Barge ADA for the 311 days set forth in the foregoing paragraph 36.

40. As a result of Plaintiff's failure to return the Barge ADA to Defendant, Defendant was damaged in the amount of $233,250.00, for which Defendant demands judgment against Plaintiff.

### AS AND FOR A SECOND COUNTERCLAIM

41. Defendant repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 40 as if fully set forth herein.

42. Defendant was wrongfully deprived of hire at the reasonable daily rate of $750 per day for the Barge ADA for the 607 days set forth in the forgoing paragraph 37.

43. As a result of Plaintiff's willful and unjustified refusal to return the Barge ADA to Defendant, Defendant was damaged in the amount of $455,250.00, for which Defendant demands judgment against Plaintiff.

### AS AND FOR A THIRD COUNTERCLAIM

44. Defendant repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 43 as if fully set forth herein.

45. During the period that Plaintiff withheld the Barge ADA, Plaintiff negligently, recklessly and/or intentionally caused or allowed physical damage to the Barge ADA to occur, the amount of which has not yet been determined, for

which Defendant demands judgment against Plaintiff.

## AS AND FOR A FOURTH COUNTERCLAIM

46. Defendant repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 45 as if fully set forth herein.

47. During the period that Plaintiff withheld the Barge ADA, Plaintiff negligently, recklessly and/or intentionally caused or allowed physical damage to the Barge ADA to occur, which has required Defendant to have a physical inspection of the hull of the barge performed at a cost of approximately $15,000.00, for which Defendant demands judgment against Plaintiff.

Obviously, there remain issues of fact relating to the quantum of damages on the counterclaims, but Plaintiff's having intentionally withheld the barge from its registered owner as "security"--prohibiting Defendant even from gaining access to the barge in order to inspect it, to mitigate ongoing physical damages due to rust and corrosion, and to prevent possible environmental harm due to sinking or breaking away from the dock (fortunately, a harmful consequence that, to Defendant's knowledge, has not come to fruition)--removes any dispute that Defendant is entitled to compensation for loss of use of the barge and for any physical damage that occurred during that period.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's claims should be dismissed as a matter of law, and Defendant's counterclaim for damages in an amount to be

determined at inquest should be awarded as a matter of law.  Further, sanctions, costs, and attorney's fees should be awarded to Defendant pursuant to the Rule 11 motion filed herewith.

Dated:        January 30, 2007
              Port Washington, New York


                                    _____/s/_____
                                    James M. Maloney (JM-5297)
                                    Attorney for Defendant
                                    33 Bayview Avenue
                                    Port Washington, New York

                                    (516) 767-1395