UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
GOWANUS INDUSTRIAL PARK, INC.,

                                        Case No. CV-06-0105

                     Plaintiff,


          -against-


ARTHUR H. SULZER ASSOCIATES, INC.,


                     Defendant.
------------------------------------------------------x



---------------------------------------------------------------------------------------------


**MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS
FOR SUMMARY JUDGMENT AND FOR SANCTIONS**


---------------------------------------------------------------------------------------------



                              Paykin Greenblatt Lesser & Krieg LLP
                              *Attorneys for Plaintiff*
                              185 Madison Avenue
                              New York, New York 10016
                              (212) 725-4423

## TABLE OF CONTENTS

*Page*

Statement of Facts                                                    3

Argument

Point I

Plaintiff has the right to assert claims based on state law           7

Point II

Plaintiff has a claim in quantum meruit                               9

Point III

The bareboat charter does not excuse the defendant from paying for services after the barge was abandoned                                                    12

Point IV

Defendant is not entitled to damages on its counterclaim              14

Point V

The motion for sanctions should be denied                            16

Conclusion                                                            19

## STATEMENT OF FACTS

Plaintiff is the owner of a large industrial property on the waterfront in the Gowanus Canal area, known as the Gowanus Industrial Park.  The property consists of a large, disused industrial structure that was formerly a grain elevator, an L-shaped waterfront property, a body of water known as the Henry Street Basin, the lands under water under the Henry Street Basin and the docks and bulkheads surrounding this body of water, all of which are part of the plaintiff's property.

In April of 2003 plaintiff hired CDS Marine Construction, LLC ("CDS"), a marine repair contractor, to repair the dock and bulkhead facilities owned by plaintiff at the Henry Street Basin.  CDS was controlled by a person named Kathy Young, who was its president and principal shareholder.  CDS brought three barges to the Gowanus Industrial Park to perform the work, including the Barge ADA which is the subject of this litigation.

CDS never completed the work, and abandoned the job site in August of 2003, leaving all three barges abandoned in the Henry Street Basin.  After CDS abandoned the barges, John Quadrozzi, the president of the plaintiff, spoke with Kathy Young about whether CDS intended to remove the barges from the plaintiff's property.  Ms. Young never gave a definitive response, and quickly disappeared.  On October 16, 2003 CDS filed a petition for bankruptcy in the District of New Jersey (*In re CDS Marine Construction, LLC,* case no. 03-44170-JHW).  Plaintiff was not notified of the filing in

3

bankruptcy court.  Plaintiff did not discover the bankruptcy filing until January 2004, when the trustee sent plaintiff a notice that he intended to abandon all three barges.  The trustee never informed plaintiff that the Barge ADA was owned by a third party.

After CDS abandoned the barges, plaintiff kept all three barges docked at the Henry Street basin until October of 2005, when defendant removed the Barge ADA.  The other two barges, which apparently belonged to CDS, are still there.  Throughout that time, plaintiff provided dock space and the services of linesmen.

The defendant is the registered owner of the Barge ADA, and leased the Barge ADA to CDS in 2002.  Plaintiff was not aware at the time that CDS had chartered the Barge ADA from a third party, and believed that CDS owned all three barges.  The defendant is a corporation founded by Arthur H. Sulzer, Sr.  Mr. Sulzer died in 2001, and the corporation is presently owned by his widow and his son, Arthur H. Sulzer, Jr.  The younger Mr. Sulzer became the president of the corporation in 2003.  Mr. Sulzer had other employment at all times, first with Keystone Shipping and later with the Navy, and managed the defendant's affairs on his own time.  Deposition transcript of Arthur Sulzer ("Tr."), pages 9-10.  Mr. Sulzer's role in the management was simply to charter out its barges to marine construction companies such as CDS.  Defendant admittedly had no system to monitor where its barges were being taken and did not require its charter parties to notify it of the location of the barges.  Tr. 26.

Plaintniff had no idea of the existence of the defendant until February 17, 2004, when Donna Adelsberger, an attorney in Pennsylvania, sent plaintiff a letter stating that the defendant was the owner of the Barge ADA and demanding its return.  Defendant retained Ms. Adelsberger in July 2003 to sue CDS when CDS stopped making payments on the charter party agreement, and when invoices sent to CDS were returned as undeliverable.  Tr. 28.  Ms. Adelsberger filed an action in the Eastern District of Pennsylvania on July 17, 2003 for nonpayment of the rent due on the charter (*Arthur H. Sulzer Associates Inc. v. CDS Marine Construction, LLC,* 1:06-cv-00105).  Mr. Sulzer first went to CDS' former place of business near Philadelphia to look for the barge, and then had Ms. Adelsberger hire a private investigator to search for the barge.  Tr. 33.  On August 28, 2003 the investigator, Russell Larsen, made a written report that he could not find the barge.  Copies of the Complaint filed in the Eastern District of Pennsylvania, the docket for that action, and the investigator's report are included in Exhibit 1 to defendant's motion.

Mr. Sulzer gave no further instructions to the investigator to look for the barge, gave Ms. Adelsberger instructions to keep trying to find Kathy Young, and did nothing else to try to find the barge.  Tr. 42.  Ms. Adelsberger apparently did nothing to try to find the barge, other than to prosecute the lawsuit against CDS for nonpayment of rent, until late 2003 when she apparently discovered that CDS had filed for bankruptcy.  Tr. 46.  In January 2004 Ms. Adelsberger found Kathy Young, who told her that the barge was located at the Gowanus Industrial Park.  Tr. 45.

On March 3, 2004 counsel for plaintiff responded to Ms. Adelsberger, in a letter stating that plaintiff had substantial claims for the maintenance, repair and storage of the Barge ADA, and denying anyone entry to the plaintiff's property without the plaintiff's permission.  Plaintiff did not hear anything more from the defendant until after May 14, 2004, when plaintiff's counsel sent Ms. Adelsberger a letter stating that the plaintiff would deem the Barge ADA to be abandoned unless defendant advised plaintiff of its intentions regarding the Barge ADA.  On May 19, 2004 Ms. Adelsberger responded on behalf of the defendant in a letter instructing the plaintiff to continue to hold the Barge ADA.

After that, defendant disappeared and was not heard from again until October 27, 2005, when the defendant hired a tugboat to enter the plaintiff's property and remove the Barge ADA, surreptitiously and in the middle of the night.  Defendant never made any effort to secure the return of the barge through proper legal channels, either in federal or state court, although it could have done so.  Instead, defendant waited until it had a prospective customer for the barge, and then hired a tugboat operator to enter the plaintiff's property and remove the barge.

**ARGUMENT**

POINT I

PLAINTIFF HAS THE RIGHT TO ASSERT CLAIMS BASED ON STATE LAW

The thrust of the defendant's argument is that the plaintiff has no right to seek the imposition of a maritime lien in rem under 46 U.S.C. 31342 because there was no arrest of the vessel.  Defendant then makes a giant leap to assert that the plaintiff's Complaint, which is based on state law claims, must be dismissed and sanctioned.  This argument is without merit.

In the first place, it is questionable whether the peculiar circumstances of this case meet the normal criteria for the waiver of a maritime lien.  There would, of course, be a waiver of any maritime lien if the plaintiff allowed the vessel to depart without making an effort to arrest it.[1]  That is radically different from the present case, where the defendant obtained the vessel literally by entering the plaintiff's property illegally and removing the barge by methods that are little better than piracy.  However, the present action never was an in rem proceeding in admiralty.  Instead it was an in personam claim, originally in state court and based on state law causes of action.  The essence of the plaintiff's claim is based on quantum meruit.

---

[1]  The Courts have held that the owner of the vessel has the burden of proving intentional waiver of the right to seek a maritime lien.  *Puerto Rico Ports Authority v. barge Katy-B,* 427 F.3d 93 (1ˢᵗ Cir. 2005). Defendant argues that there cannot be an in rem proceeding without an arrest of the vessel. *Dluhos v. Floating and Abandoned Vessel Know as "New York",* 162 F.3d 63 (1998).  That argument is pointless because this is not an in rem action.

In rem proceedings to foreclose a maritime line are limited to in rem claims. *Eefjohn International Cruise Holdings, Inc. v. A & L Sales, Inc.,* 346 F.3d 552 (5th Cir. 2003).  However, an in personam claim against the owner, for either contract, tort of any other cause of action, may be asserted in an in personam action.  The in rem proceeding to foreclose a maritime lien is not an exclusive remedy.[2]  *Dowell Division of the Dow Chemical Co. v. Franconia Sea Transport, Ltd.,* 504 F.Supp. 579 (S.D.N.Y. 1980); *Newport News Shipbuilding and Dry Dock Co. v. S.S. Independence,* 872 F. Supp. 262 (E.D. Va. 1994); *Southern Oregon Production Credit Association v. Oil Screw Sweet Pea,* 435 F. Supp. 454 (D. Ore. 1977).   Moreover, even in an in personam action against the owner, the plaintiff would be entitled to rely on the credit of the vessel as a 'fallback' position.  *Liverpool and London Steamship Protection & Indemnity Association, Ltd. v. M/V Abra,* 295 F. Supp. 2d 674 (M.D. La. 2003), citing *Maritrend, Inc. v. Serac & Co.,* 348 F.3d 469 (5th Cir. 2003).

There is no reason why an in personam claim against the owner of a vessel should be barred simply because there is no claim here for an in rem proceeding to foreclose a maritime lien.  In fact, it would be improper to combine them.  But the plaintiff is entitled to bring a plenary action against the owner for any other claim that it has.  Since the heart of the defendant's motion is its argument that the plaintiff's sole remedy is an in rem proceeding to foreclose a maritime lien, the Court should deny the defendant's motion.

---

[2] The barge is a vessel within the meaning of the maritime lien statute.  *In re Harbour Lights Marina, Inc. v. Bavely,* 146 B.R. 963 (S.D. Ohio 1992).

POINT II

PLAINTIFF HAS A CLAIM IN QUANTUM MERUIT

The essence of the plaintiff's claims sound in quantum meruit. There is no direct contractual relationship between the plaintiff and the defendant.  Plaintiff provided dock space and the services of its employees for almost two years, with the defendant's knowledge and acquiescence, and for a long time after the defendant knew that the plaintiff had an expectation of being paid for the barge.

It is well settled that there are four elements of a cause of action for quantum meruit: (1) performance of services in good faith; (2) acceptance of the services by the person to whom they were rendered; (3) expectation of compensation, and (4) the reasonable value of the services.  *Atlas Refrigeration-Air Conditioning, Inc. v. Lo Pinto,* 33 A.D.3d 639, 821 N.Y.S.2d 900 (2d Dept. 2006).  There is a triable issue of fact on all of these elements.

There is no dispute that the plaintiff provided dock space for the barge at all times from when CDS left the job site until the defendant removed it.  Indeed, plaintiff had no choice other than to do so, since CDS simply abandoned the barge.  The evidence also demonstrates that the defendant knew that plaintiff expected to be paid for the dock space for the barge, and acquiesced in the plaintiff continuing to provide dock space for the next twenty months *after* the defendant was put on actual notice that the plaintiff expected to be paid.

It is undisputed that the plaintiff had an expectation of being paid for the dock space, and it is also undisputed that defendant was given written notice that the plaintiff expected to be paid for the services it rendered to the barge on March 3, 2004, when plaintiff's counsel sent Ms. Adelsberger a letter stating that the plaintiff had claims for its services.  Mr. Sulzer admits that the attorney advised him of the plaintiff's letter dated March 3, 2004.  Tr. 62.  Defendant did absolutely nothing and simply kept the barge on the plaintiff's property for the next year and a half, apparently trying to get the plaintiff to store his barge free of charge until the defendant was able to find a customer for it.  This inaction was acquiescence in the plaintiff continuing to store the barge, with actual knowledge that the plaintiff expected to be paid.

Defendant claims that he did not agree to the plaintiff continuing to provide services, and that the plaintiff held the barge against his will.  This argument is a red herring.  Defendant made no effort to secure the return of the barge.  Defendant could have taken legal action to obtain the barge, or could have attempted to negotiate with the plaintiff regarding the plaintiff's claims.  Instead, defendant simply took advantage of what it saw as an opportunity to get storage for the barge.  Mr. Sulzer admits that he did not give his attorney any instructions to take action to obtain the barge.  Tr. 62 and 73. He admits he made no effort to communicate with the plaintiff after March of 2004.  Tr. 91-93.  Although Mr. Sulzer claimed at his deposition that he had a prospective customer for the barge while it was in the plaintiff's custody, his testimony was vague and evasive, and defendant has never identified anyone as a prospective customer for the barge.  These

facts warrant an inference that Mr. Sulzer acquiesced in the plaintiff continuing to dock the barge, and the defendant's motion should be denied.

Moreover, the defendant made only desultory efforts to try to find the barge before February 2004.  In August 2003 the defendant had Ms. Adelsberger hire an investigator to try to find Kathy Young, and drove around waterfront areas in the Delaware River and Staten Island looking for the barge.  After that, the defendant admittedly did nothing other than to give his attorney instructions to sue CDS for the unpaid rental of the barge.  This was not an accident- if the defendant had concentrated its effort on finding the barge, the defendant would have had to dock the vessel for months (at considerable expense) while it was trying to find a customer.  Collection of the rent was obviously a more attractive option, and the defendant elected to pursue its claim for rent.  Defendant did not make serious efforts to find the vessel until *after* it discovered that CDS had filed for bankruptcy, and that its judgment for the rent was unenforceable.

Defendant argues that the rates demanded by the plaintiff are excessive.  This is an issue of fact for the trial.  Once a claim has been established for quantum meruit, plaintiff is entitled to the reasonable value of its services, and the amount of such reasonable value is an issue for trial.  Defendant itself introduced the testimony of John Quadrozzi that the amount claimed for dock space and services was determined at a rate that included a premium amount for the way that the barge was simply dumped on the plaintiff's property and left there in an unauthorized manner.

11

The Courts have held that whether the plaintiff had a reasonable expectation of compensation for services rendered is a matter for the trier of fact. *In re Alu,* 302 A.D.2d 520, 755 N.Y.S.2d 289 (2d Dept. 2003). In fact, this is conceded in the defendant's brief. There is a triable issue of fact here as to whether the defendant's inaction constituted acquiescence to the plaintiff continuing to provide services to the barge, with (admitted) knowledge that the plaintiff expected to be paid for it. The Court should deny the motion for summary judgment.

POINT III

THE BAREBOAT CHARTER DOES NOT EXCUSE THE DEFENDANT FROM PAYING FOR SERVICES AFTER THE BARGE WAS ABANDONED

Defendant argues at length that the bareboat charter insulates it from liability for the services at issue here.[3] This argument is without merit.

In the first place, the Courts have held that a charterer can bind the owner for claims for necessaries even when there is a bareboat charter. *In re Seascape Cruises, Ltd.,* 172 B.R. 1002 (S.D. Fla. 1994); *Redcliffe Americas Ltd. v. M/V Tyson Lykes,* 806 F. Supp. 69 (D. S.C. 1992); *Ceres Marine Terminals, Inc. v. M/V Harmen Oldendorff,* 913

---

[3] Defendant's conclusory argument that it has no responsibility for the acts of the disponent owner, i.e. CDS, is based entirely on one case, *Otto Wolff Handelgesellschaft mbH v. Sheridan Transportation Company,* 800 F. Supp. 1359 (E.D. Va. 1992). That case, however, is clearly distinguishable: in *Otto Wolff* the consignee of freight sued the vessel owner, not the party who chartered the vessel, for damage to the cargo while the disponent owner had the sole use of the vessel.

F. Supp. 919 (D. Md. 1995).  The person who provides the necessaries has no duty to inquire into whether the person in custody of the vessel has authority to bind the owner. *Ferromet Resources, inc. v. Chemoil Corp.,* 5 F.3d 902 (5th Cir. 1993).  This is beside the point, however, for two reasons: first, because this is not an action in rem, but an in personam action against the owner, and second and more importantly, the greater part of the services were rendered to the owner directly, not to CDS.

CDS did bring the barge to the plaintiff's property, and abandoned it there in August 2003, where it remained until the defendant came forward as the owner in February 2004.  All services after that time were rendered to the owner; by that time, CDS had ceased to exist, after its Chapter 7 case was closed in early 2004.  Moreover, even with respect to the period before the defendant came forward as the owner of the barge, there is a fact issue as to whether the defendant exercised due diligence in attempting to locate the barge.  Defendant admitted that he did little to find the barge, other than to leave the matter in the hands of his attorney, with little or no instructions to make efforts to fin the barge.  In fact, the defendant first resorted to suing CDS for its unpaid rentals, and only tried to find the barge when it discovered that CDS had filed for bankruptcy.[4]

Defendant argues that the plaintiff's claim is barred by its failure to file a proof of claim in the bankruptcy of CDS.  This argument is without merit.  The claims asserted here are not against the debtor, but rather against the defendant, the owner.  Almost all of

---

[4] The prosecution of the action against CDS by the defendant was a contempt of court, as a violation of the automatic stay.  *In re McLean Industries, Inc.,* 68 B.R. 690 (S.D.N.Y. 1986).

the claim seeks to recover for events that happened after the bankruptcy of CDS was terminated.  The bankruptcy of CDS does not discharge any person other than the debtor, even for liability for the same debt.  *Green v. Walsh,* 956 F.2d 30 (2d Cir. 1992).  It certainly does not discharge the defendant for its own obligations, long after CDS had ceased to exist.  Moreover, plaintiff never had notice of the CDS bankruptcy, and a creditor is not bound by a bankruptcy of which it did not have notice.  *In re U.S.H. Corp.,* 223 B.R. 654 (S.D.N.Y. 1998).

POINT IV

DEFENDANT IS NOT ENTITLED TO DAMAGES ON ITS COUNTERCLAIM

Defendant claims that the plaintiff is liable for the lost rental of the barge, and also claims that the plaintiff damaged the barge.  These claims are without merit.  Furthermore, defendant resorted to illegal self-help, and should not be rewarded for its acts.

Defendant's counterclaim for alleged lost rentals is without merit.  Defendant has never submitted any evidence that it had a customer for the barge at any time while it was in the plaintiff's custody.  Mr. Sulzer claimed at his deposition that he had a prospective customer for the barge.  However, he could not identify the customer and admitted that he had no records that could identify the customer.  Tr. 74.  Defendant did not identify any prospective customer for the barge in its joint pretrial order, or identify any witnesses

who will testify to this, and is precluded from doing so now. Accordingly, the counterclaim for alleged lost rentals is without merit.

Defendant claims that the plaintiff damaged the barge by failing to replace a corrosion meter. There is no evidence that the defendant ever gave the plaintiff any instructions for the care of the barge, or ever offered to pay for the installation of any devices. There is a degree of inconsistency in countersuing the plaintiff for not providing a service that the defendant admittedly would have refused to pay for if the plaintiff had performed it on the plaintiff's own initiative. Defendant also resorted to illegal self-help, intruding onto the plaintiff's property (contrary to the defendant's assertion, the basin is part of the plaintiff's property) in the middle of the night and removing the vessel. Defendant could have resorted to proper legal channels to obtain the barge. Instead, the defendant's agents came in the middle of the night, entered the plaintiff's property illegally, and removed the barge. The Courts have often denied relief to a party that is guilty of resorting to self-help, most often in matrimonial cases but also in other situations. *Andersen Consulting Business Unit Member Firms v. Andersen Worldwide Societe Cooperative,* 1998 WL 122590 (S.D.N.Y. 1998); *Pantoja v. Scott,* 2001 WL 1313358 (S.D.N.Y. 2001). Defendant should be denied summary judgment on its counterclaims.

POINT V

THE MOTION FOR SANCTIONS SHOULD BE DENIED

Defendant's motion for sanctions is based on the narrow grounds that the defendant claims plaintiff has no right to bring this action without arresting the vessel. The motion essentially claims that the plaintiff should be sanctioned because there is no admiralty jurisdiction. That argument is bizarre in light of the fact that the plaintiff started this action in state court, and the defendant removed it, asserting admiralty jurisdiction. Plaintiff has asserted claims under state law independent of admiralty jurisdiction. This is conceded by the plaintiff in the joint pretrial order, which lists diversity as a basis for removal jurisdiction as well as admiralty. Since the motion is based on the narrow argument that there is no claim in admiralty without an arrest of the vessel, this alone warrants denial of the motion for sanctions. The Second Circuit has held that the notice requirements of Rule 11 bar the imposition of sanctions for any grounds other than those specifically cited in the motion for sanctions. *Storey v. Cello Holdings LLC,* 347 F.3d 370 (2d Cir. 2003).

Even if the Court grants the defendant's motion for summary judgment, sanctions are inappropriate. Sanctions are limited to conduct that is an abuse of the judicial system, and are not a penalty for losing. *Salovaara v. Eckert,* 222 F.3d 19 (2d Cir. 2000). Sanctions are inappropriate if there is some basis in the facts or law to support the claims made by the losing party, even if its claims are ultimately a losing argument and the Complaint is dismissed. *Burke v. Quick Lift, Inc.,* 464 F. Supp. 2d 150 (E.D.N.Y. 2006); *Bobrowsky v. Curran,* 333 F. Supp. 2d 159 (2004). The Courts have held that "Rule 11 is

16

violated only when it is patently clear that a claim has absolutely no chance of success." *Burke, supra,* citing *Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir. 1986).  Even a novel legal theory is not sanctionable unless it is "absolutely beyond acceptance as a novel legal theory."  *Kropelnicki v. Siegel,* 290 F.3d 118 (2d Cir. 2001).

As stated above, there is an issue here as to whether the defendant acquiesced in the services performed by the plaintiff in providing dock space for the barge, since the defendant admittedly did nothing to obtain the release of the barge for over a year after it had actual notice that the plaintiff expected to be paid for the use of its dock space.  Even if the Court ultimately rules against the plaintiff on that issue, the issue was at least fairly presented to this Court in this litigation, and a claim was stated that merits the Court making a determination as to whether the defendant did acquiesce in the plaintiff's storage of the barge.  If the Court does grant the defendant's motion for summary judgment, this case is an excellent example of a claim that has some arguments to be made and evidence to be considered in support of the claim, which dictates that the motion for sanctions should be denied.  *Salovaara, supra.*  The Courts have held that the all doubts on a motion for sanctions must be resolved in favor of the party against whom sanctions are sought.  *Burke, supra.*

The imposition of sanctions under Rule 11 is discretionary, not mandatory.  Even if the Court finds that there has been a violation of Rule 11, it still has discretion not to impose sanctions.  *Perez v. Posse Comitatus,* 373 F.3d 321 (2d Cir. 2004).  In the present case, not only are there meritorious claims, but there are other compelling reasons

not to impose sanctions even if the Court grants the defendant's motion for summary judgment.

Plaintiff originally started this action in state court, not as some type of in rem proceeding, but rather as a plenary action under a state law theory of quantum meruit. Any admiralty aspect of this action was introduced by the defendant, which removed this action to federal court.  It is grossly inconsistent for the defendant to remove this action to federal court by asserting admiralty jurisdiction, and then claim that sanctions should be imposed for an issue that the defendant itself introduced into what had previously been an action in state court under state law.

Defendant should also not be heard to complain that there was no arrest of the vessel.   This was made impossible by the defendant's resort to illegal self-help. Defendant entered the plaintiff's property illegally in the middle of the night and removed the barge, which was tied to the plaintiff's pier.  Even if the entry into the navigable waters of the basin was not illegal (as argued by defendant), the barge was tied to the two other barges that were moored to the plaintiff's pier, and the defendant's agents had no right to set foot on the other barges to remove the cables that moored the Barge ADA.  The defendant's resort to illegal self-help is also a factor that militates in favor of the Court exercising its discretion to deny sanctions.  Defendant could have resorted to proper legal channels to obtain the barge, but instead elected to engage in self-help.  The basis for this motion is that the barge was never arrested.  That was rendered

impossible by the defendant's own resort to illegal self-help.  The Court should deny the motion for sanctions.

## CONCLUSION

For the reasons set forth above, the Court should deny the defendant's motions for summary judgment and for sanctions, together with such further and different relief as the Court may deem just and proper.

Dated: New York, New York
       February 20, 2007

                Respectfully submitted,

                Paykin Greenblatt Lesser & Krieg, LLP

              By: _____s/_____
                    James Klatsky, Esq.- JK 7661
                    Attorneys for Plaintiff Defendant
                    185 Madison Avenue
                    New York, New York 10016
                    (212) 725-4423