

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GOWANUS INDUSTRIAL PARK, INC.,

                              Plaintiff,

-against-

ARTHUR H. SULZER ASSOCIATES, INC.,

                              Defendant.
------------------------------------------------------------X

06 CV 105 (SJ)

**MEMORANDUM AND ORDER**

A P P E A R A N C E S:

PAYKIN GREENBLATT LESSER & KRIEG
185 Madison Avenue
New York, New York 10016
By:    James Klatsky, Esq.
Attorneys for Plaintiffs

JAMES M. MALONEY
33 Bayview Avenue
New York, NY 10165
Attorney for Defendants

JOHNSON, Senior District Judge:

      Gowanus Industrial Park, Inc. ("Plaintiff"), a corporation organized under the laws of the state of New York, brings this action against Arthur H. Sulzer, Inc. ("Defendant"), a Pennsylvania corporation, alleging that Defendant is liable for expenses incurred as a result of services rendered by the Plaintiff from August 2003 to October 2005, in connection with the storage and maintenance of a barge (the

1

"Barge ADA") owned by Defendant and located on the Plaintiff's property during the relevant timeframe. Defendant now moves for summary judgment dismissing the Plaintiff's claim and for partial summary judgment, with respect to the issue of liability only, as it relates to the Defendant's counterclaims against Plaintiff for allegedly withholding the Barge ADA to the Defendant's detriment. In addition, the Defendant moves for sanctions against the Plaintiff, pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). For the reasons stated herein, the Defendant's motions for summary judgment, partial summary judgment, and for Rule 11 sanctions are hereby GRANTED.

## BACKGROUND

The parties agree that on or about May 30, 2000, the Defendant leased the Barge ADA to CDS Marine Construction, LLC ("CDS"), pursuant to a demise charter party, at a rate of $3,100 per month. Ex. 1 to Def. Rule 56.1 Statement.[1] In April 2003, unbeknownst to the Defendant, CDS entered into a contract with the Plaintiff to repair the Plaintiff's dock and bulkhead facilities located at the Henry Street Basin. In order to carry out its work, CDS transported three barges to the work site, including the Barge ADA, which was still in the possession of CDS

---

[1] The terms of the charter party suggest that, while the vessel was under charter, the Barge ADA was to be staffed and maintained exclusively by CDS. In addition, the charter party appears to include no restrictions with respect to where and for what purpose CDS used the Barge ADA during the term of the lease. In fact, there is no indication that CDS was under any obligation to keep the Defendant informed as to the usage or whereabouts of the Barge ADA while the vessel was in its possession.

under the aforementioned demise charter party. Though CDS began work at the Plaintiff's facilities shortly thereafter, CDS failed to complete the job and abandoned the work site in August 2003, leaving all three barges unattended on the Plaintiff's property at the Henry Street Basin. Compl., p. 2.

Meanwhile, the Defendant commenced an action against CDS in the Eastern District of Pennsylvania in July 2003 on the grounds that, as of November 2002, the Defendant had stopped receiving monthly hire payments from CDS, as required under the demise charter party. Mem. in Supp. Def.'s Rule 56 Mot., p. 4. Specifically, the Defendant filed suit in order to recover the barge, the location of which was unknown to the Defendant at the time the action was commenced, and to recover the hire payments that should have been made by CDS between November 2002 and July 2003. Id.

On or about October 16, 2003, CDS filed for bankruptcy in the District of New Jersey and was subsequently discharged in bankruptcy in July 2004. Compl., p. 3; Mem. in Supp. Def.'s Rule 56 Mot., p. 5. Neither the Plaintiff nor the Defendant in this matter was aware that CDS had filed for bankruptcy until well after those proceedings had begun. In or about January 2004, the Plaintiff was contacted by representatives from CDS and informed that the company had filed for bankruptcy. Mem. in Opp'n to Mot. for Summ. J. and Sanctions, p. 4. Plaintiff was further informed at that time that CDS intended to abandon all three barges left at the job site, including the Barge ADA. Id.

3

Also in January 2004, Defendant learned of the bankruptcy proceedings and that the Barge ADA was left unattended at the Plaintiff's dock. Tr. 45; Mem. in Opp'n to Mot. for Summ. J. and Sanctions, p. 5. By all accounts, this was the Defendant's first indication that CDS had entered into a contract with the Plaintiff and subsequently abandoned the job prior to completing its work.

In a letter dated February 17, 2004, the Defendant informed the Plaintiff that it was the registered owner of the Barge ADA and that it was seeking to make arrangements to recover said barge from the Plaintiff's dock. Mem. in Opp'n to Mot. for Summ. J. and Sanctions, p. 5. This letter constituted the first communication between the Plaintiff and the Defendant. Id.

On or about March 3, 2004, counsel for the Plaintiff responded to the February 17 letter by denying the Defendant's request to enter the Plaintiff's property to recover the barge, and noting that the Plaintiff had substantial and ongoing claims for the maintenance, repair, and storage of the Barge ADA dating back to the point at which CDS abandoned the job site. Id. at 6.

There is some dispute between the parties as to the timing and nature of their communications immediately following the Defendant's receipt of the Plaintiff's March 3 letter. However, the parties agree that, on or about May 14, 2004, Plaintiff's counsel sent another letter to the Defendant, indicating that the Plaintiff would consider the Barge ADA abandoned if Defendant did not advise the Plaintiff as to its intentions with respect to recovering the vessel and paying for the

4

Plaintiff's maintenance, repair, and storage of the barge. Id. The Defendant responded in a May 19, 2004 letter stating unequivocally that it was not abandoning the Barge ADA and had only failed to recover the vessel because the Plaintiff had denied Defendant's previous requests for access to the dock. Ex. 9 Def. Rule 56.1 Statement as to Countercl.

More than a year later, on or about October 27, 2005, the Defendant resorted to self-help by securing a tugboat, entering the waters surrounding the Plaintiff's dock, and recovering the Barge ADA. Mem. in Supp. Def.'s Rule 56 Mot., p. 9. The Plaintiff then filed this suit in the Supreme Court of the State of New York, after which the Defendant removed the case to this Court. Id.

## JURISDICTION AND APPLICABLE LAW

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the case involves complete diversity and an amount in controversy in excess of $75,000.

## STANDARD OF REVIEW

It is well-settled that a party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir.2003). Material facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248. An issue of fact is considered

5

"genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. Id. When considering a motion for summary judgment, the Court must view the evidence, as well as any inferences that may be drawn from such evidence, in the light most favorable to the non-moving party. See Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Const. Corp. v. City of N.Y., 762 F.2d 243, 249 (2d Cir.1985).

P-049

# DISCUSSION

*A) Motion for Summary Judgment Dismissing Plaintiff's Claims*

Although the Defendant has presented a number of arguments in support of its Motion for Summary Judgment, this Court need only address the issue of whether or not a valid demise charter party existed between Defendant and CDS in order to determine whether summary judgment is appropriate in this case. For, as noted below, the case law makes clear that where a demise charter party does indeed exist, the registered owner of the vessel in question cannot be held liable for injuries caused by the use or operation of said vessel by the charterer.

In addressing the issue of whether or not a demise charter exists in a given situation, the U.S. Supreme Court has noted that the evidence indicating that such an agreement was in place must be unmistakable, particularly where the owner is seeking to avoid *in personam* liability. See Guzman v. Pichirilo, 369 U.S. 698 (1962) (party seeking to be isolated from liability based on a demise charter has the heavy burden of proving the existence of such charter; the owner in this case was not able to do so because there was no formal charter in place). To facilitate the inquiry as to whether or not a demise charter existed under the particular facts in Guzman, the Court stated that "[t]o create a demise the owner of the vessel must completely and exclusively relinquish 'possession, command, and navigation' thereof to the demise." Guzman, at 699-700. The Court added that such an

7

arrangement "is therefore tantamount to, though just short of, an outright transfer of ownership." Id.

Lower courts have held that, where employees of the registered owner of a vessel continue to occupy and operate the vessel, a demise charter will not shield the owner from liability. See Walker v. Braus, 995 F.2d 77, 81 (5th Cir. 1993) ("Because the charter's personnel operate and man the vessel during a demise charter, the charterer has liability for any and all casualties resulting from such operation and therefore provides insurance for such liability.")

Consistent with the U.S. Supreme Court's ruling in Guzman, federal district courts have gone to great lengths to ensure that a demise charter actually existed, even where the parties' written agreement expresses an intent to create a demise charter. See Federal Barge Lines, Inc. v. SCNO Barge Lines, Inc., 711 F.2d 110, 112 (8th Cir. 1983) ("…the clear intent of the charter agreement was to create a 'demise charter' and to shift liability for the negligence of the M/V FT. PIERRE from SCNO to United…. Having found that the parties intended to create a 'demise charter' by their agreement, the district court then looked to their actions for evidence of inconsistency, and further found that 'there is no extrinsic evidence of *conduct* by the parties inconsistent with the expressed intent to create a demise.'")

The court's decision in Kerr-McGee v. Law, 479 F.2d 61 (4th Cir. 1973), provides further support for the notion that the owner's liability is limited where a valid demise charter exists. Citing a number of prior cases, including two from the

8

P-049

Second Circuit[2], the court noted that "...the owner of a vessel under a demise charter is liable only for unseaworthiness or negligence that pre-exists the charter" (citations omitted). Kerr-McGee, 479 F.2d at 63. The court went on to explain that:

> ...when the owner of the vessel enters into a demise charter, he surrenders all possession and control of the vessel to the charterer. Since he no longer has the right to control the use of the vessel, he is no longer charged with the duties and liabilities that arise out of its ownership. Conversely, the demise charterer "becomes subject to the duties and responsibilities of ownership." (citing Leary v. United States, 81 U.S. (14 Wall.) 607, 610, 20 L. Ed. 756 (1872)) Id.

Given the facts of the case at bar, it is abundantly clear that a demise charter did, in fact, exist between the Defendant and CDS prior to the point at which the Plaintiff contracted with CDS to repair its dock. First, it should be pointed out that the Plaintiff has never questioned the validity of the agreement between the Defendant and CDS. Hence, the Plaintiff has failed to raise any issue of material fact with respect to whether or not a valid demise charter existed between the Defendant and CDS at the time of Plaintiff's alleged injuries.

Second, the supporting documentation filed by the Defendant, including a copy of the written contract entered into by the Defendant and CDS indicate a clear intent by the parties to create a demise charter party. Ex. 1 to Def.'s Rule 56.1 Statement as to Countercl. Moreover, the subsequent actions of the parties are not inconsistent with their expressed intent to create a demise charter. The evidence

---

[2] See In re New York Dock Co., 61 F.2d 777 (2d Cir. 1932); In re Marine Sulphur Queen, 460 F.2d 89, 100 (2d Cir. 1972) (dictum).

9

suggests that, as of May 2000, the Barge ADA was in the exclusive possession of CDS. The Defendant was in no way involved in the maintenance or operation of the vessel, and was not a party to CDS's contract with the Plaintiff. Indeed, the Plaintiff seems to concede that the Defendant was not even aware of the location of the Barge until after the CDS bankruptcy proceedings were well under way. Mem. in Opp'n to Mot. for Summ. J. and Sanctions, p. 5.

Third, the demise charter was never formally terminated by Defendant or CDS, as required by the contract. Ex. 1 to Rule 56.1 Statement. Therefore, despite the fact that CDS stopped making its hire payments in November 2002, thereby prompting the initiation of a lawsuit by the Defendant, the charter—and by extension, the rights and obligations arising out of the charter—was still in effect during much of the time period for which the Plaintiff now seeks compensation. In addition, even if the charter was rendered void following the close of the CDS bankruptcy proceedings in July 2005, from that point forward it was the Plaintiff who refused to allow the Defendant to remove the barge from its dock without payment. Dep. of John Quadrozzi, Jr., p. 51.

Given all of these circumstances, this Court finds that there exists no genuine issue of material fact with respect to whether or not CDS was in possession of the Barge ADA pursuant to a valid demise charter party during the timeframe in question. Hence, the Plaintiff's *in personam* claims would be cognizable solely

P-049

against CDS, in its role as charterer of the Barge ADA, and not against the Defendant.

B) *Partial Motion for Summary Judgment*

According to the pleadings currently before this Court, there appear to be no genuine issues of material fact regarding whether or not the Defendant was the registered owner of the Barge ADA. Indeed, the Plaintiff's claims against the Defendant are based in large part on its assertion that the Defendant owned the Barge and is therefore liable for the services rendered to the Barge while it was in the Plaintiff's possession. It is also undisputed that, after learning that Defendant was the registered owner of the Barge ADA sometime in early 2004, the Plaintiff refused to allow the Defendant to recover or even inspect the barge unless or until the Defendant paid the Plaintiff for the services rendered. Dep. of John Quadrozzi, Jr., pages 48-52. Particularly in light of the fact that the Plaintiff and Defendant never entered into any kind of contractual agreement, the Plaintiff has presented no legal justification for withholding the Defendant's property.

However, the extent to which the Defendant was harmed as a result of the Plaintiff's withholding of the Barge ADA involves numerous issues of fact that must be resolved in further proceedings.[3]

---

[3] Such proceedings will also provide an opportunity to address the Defendant's act of "self-help" in recovering the Barge ADA, and the extent to which that act should impact the damages award, if at all.

11

*C) Motion for Rule 11 Sanctions*

The Defendant also argues that the Plaintiff's claims in the instant case are frivolous and were filed in an effort to retaliate against the Defendant. Moreover, the Defendant argues that the Plaintiff made certain false representations to the Court in its Memorandum of Law in Opposition to Motions for Summary Judgment and For Sanctions. Hence, the Defendant has asked the Court to impose sanctions on the Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). For the reasons stated below, the Court finds that, with respect to the false representations apparently made by the Plaintiff, Rule 11 sanctions are appropriate in this case.

Fed. R. Civ. P. 11(b) states that whenever a signed pleading or "other paper" is submitted to the court, an attorney certifies that:

> (1) [the paper] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if

P-049

specifically so identified, are reasonably based on a lack of information or belief. Fed. R. Civ. P. 11(b).

It should be noted that "only conduct explicitly referred to in the instrument providing notice is sanctionable." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999). In its motion for sanctions, the Defendant does not indicate which specific section of Rule 11 was allegedly violated by the Plaintiff. However, the Defendant's allegations suggest that the Plaintiff has run afoul of Fed. R. Civ. P. 11(b)(1), (2), and (3). In particular, the Defendant suggests that the Plaintiff 1) filed this lawsuit in an effort to retaliate against the Defendant for retrieving the Barge ADA from the Plaintiff's dock, thus presenting its claims to the court for an improper purpose, thereby violating Rule 11(b)(1); 2) filed frivolous claims, in violation of Rule 11(b)(2); and 3) made a number of false statements in its pleadings, particularly regarding the nature and content of certain correspondence between the parties prior to the commencement of these proceedings.

1) Rule 11(b)(1) – Improper Purpose

First, with respect to the Defendant's claim that the Plaintiff filed this lawsuit for an improper purpose (i.e. as a retaliatory tactic), there is nothing in the record to support such a contention. Although the Plaintiff clearly was not happy with what it characterized as the Defendant's engagement in "illegal self-help" in

13

P-049

connection with the retrieval of the Barge ADA, it does not necessarily follow that this action was commenced in retaliation. Indeed, the prior correspondence between the parties suggests that the Plaintiff filed this suit in an earnest attempt to recover the expenses to which it believed it was entitled. Although this Court has found the Plaintiff's arguments unpersuasive, there is simply no evidence in the record that would lead the Court to believe that retaliation was the Plaintiff's motivation for filing suit.

2) Rule 11(b)(2) – Frivolous Claims

The Defendant also argues that the Plaintiff's claims for damages from the Defendant, as opposed to CDS, are frivolous, given that the parties to this lawsuit never entered into any contract whatsoever. The Plaintiff's only cognizable claims, the Defendant contends, were against CDS. The Defendant goes on to note that, despite the fact that CDS ultimately went into bankruptcy, the Plaintiff could have pursued an *in rem* action against the vessel itself, but failed to do so. Mem. in Supp. Def.'s Rule 56 Mot., p. 8. In addition, the Defendant points out that all of the Plaintiff's claims for services against Defendant were based either on events that occurred while the barge was in the custody and control of CDS, pursuant to a valid demise charter party, or after Plaintiff was made aware that the barge was owned by the Defendant, at which point the Plaintiff prevented the Defendant from

14

P-049

inspecting and/or recovering the barge. The Defendant argues that these facts further demonstrate the frivolous nature of the Plaintiff's lawsuit.

When determining whether or not Rule 11(b)(2) has been violated, the court must decide whether the claims or legal arguments being advanced are "so untenable as a matter of law as to necessitate sanction." Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990). More specifically, "it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Id. It also should be noted that, even if the court finds that a party's claims are frivolous, Rule 11(c)(2) specifically prohibits monetary sanctions for such a violation. Fed. R. Civ. P. 11(c)(2).

While the Plaintiff clearly made some strategic mistakes in its efforts to recover expenses for the services it provided in connection with the Barge ADA, such mistakes do not render the current suit frivolous, though perhaps ill-advised. Moreover, while this Court has granted the Defendant's Motion for Summary Judgment based on the fact that the Defendant had relinquished control of the Barge ADA to CDS under a valid demise charter party, it is at least arguable (though erroneous in the Court's view) that the Defendant, as the registered owner of the vessel, bears some responsibility for the costs incurred by the Plaintiff after the Defendant learned of the CDS bankruptcy, as well as the location and status of the Barge ADA. For "[a] distinction must be drawn between a position which is

15

P-049

'merely losing' and one which is both 'losing and sanctionable.'" Securities Industry Association v. Clarke, 898 F.2d 318, 321 (2d Cir. 1990) (reversed on other grounds). Moreover, the Second Circuit has held that "[w]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . .we have instructed district courts to resolve all doubts in favor of the signer" of the pleading. Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993).

The Court finds that the Plaintiff's legal arguments, while unconvincing and poorly crafted, can not be considered frivolous as that term is understood in the context of Rule 11(b)(2).

3) False Statements

Finally, and perhaps most troubling, the Defendant maintains, and the documentary evidence confirms, that the Plaintiff included false statements in its pleadings with respect to the content of the correspondence between the parties prior to the commencement of this action. Mem. of Law in Reply, p. 2-3. In particular, the Defendant points out that the Plaintiff made "several serious misstatements of fact" in its response to the Defendant's motion for summary judgment and sanctions, which could amount to a violation of Rule 11(b)(3). Id. at 2. However, the Court has identified only one of the cited statements as warranting sanctions. Specifically, the Plaintiff states that "[o]n May 19, 2004, Donna

16

Adelsberger responded on behalf of the defendant in a letter instructing the plaintiff to continue to hold the Barge ADA." Mem. in Opp'n to Mot. for Summ. J. and Sanctions, p. 6. However, the letter, which the Defendant filed with the Court along with its Rule 56.1 Statement as to Counterclaims, says no such thing. In fact, Ms. Adelberger's letter makes it clear that the Defendant was requesting that the Plaintiff release the vessel as soon as possible. Ex. 9 to Def.'s Rule 56.1 Statement as to Countercl. Among other things, Ms. Adelberger's letter states that she considered the barge "as good as stolen by your client." Id. She goes on to state unequivocally, "UNDER NO CIRCUMSTANCES ARE YOU TO CONSIDER THE BARGE ADA ABANDONED." Id. Finally, Ms. Adelberger informed the Plaintiff that the Defendant had "retained a local attorney in New York who will be filing the appropriate papers, not only to retrieve the barge, but also for damages for the time that [the Defendant] has been deprived of the use of his barge." Id. It is difficult to imagine language more clearly at odds with the Plaintiff's claim that Ms. Adelberger asked the Plaintiff to remain in possession of the barge.

Given these facts, the Court finds that, by making factual contentions to the Court that are completely unsupported by the evidence, the Plaintiff did indeed violate Rule 11(b)(3) and should be sanctioned accordingly. Specifically, the Court hereby directs Plaintiff's counsel to pay a fine to the Court in the amount of $1,000.00, to be paid in full within 30 days of this order. In addition, pursuant to

Rule 11(c)(1)(A), the law firm with whom Plaintiff's counsel is employed shall be held jointly responsible for the violation described above.

Finally, the Court notes that, in addition to violating Rule 11, Plaintiff's misrepresentation also runs afoul of the American Bar Association's Model Rules of Professional Conduct ("Model Rules"). In particular, counsel's conduct flies in the face of Model Rule 3.3, which states, *inter alia*, that an attorney shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Model Rule of Prof. Conduct 3.3(a)(1). This Court takes such violations quite seriously and hereby admonishes Plaintiff's counsel for what amounts to unsavory and unethical conduct in the practice of law.

## CONCLUSION

For these reasons, the Defendant's motion for summary judgment is hereby GRANTED. The Defendant's motion for partial summary judgment with respect to its counterclaims is also GRANTED. In addition, the Defendant's Motion for Rule 11 Sanctions is GRANTED. The Court refers this matter to Magistrate Judge James Orenstein to recommend a damages award with respect to the Defendant's counterclaims, and to conduct an inquest or make any findings of fact relevant thereto.

SO ORDERED.

P-049

Dated: March 31, 2008  
      Brooklyn, New York         _____  
                                           Senior U.S.D.J.