```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
GOWANUS INDUSTRIAL PARK, INC.,
                                              FOR ELECTRONIC
              Plaintiff,                      PUBLICATION ONLY

    - against -                                **MEMORANDUM & ORDER**

ARTHUR H. SULZER ASSOCIATES, INC.,            06-CV-105 (KAM) (JO)

              Defendant.
----------------------------------------X
```
MATSUMOTO, United States District Judge:

Plaintiff Gowanus Industrial Park, Inc. ("plaintiff" or "Gowanus") objects to the March 24, 2010 Report and Recommendation (Doc. No. 68, "R&R") of Magistrate Judge James Orenstein in which Judge Orenstein recommends, following an evidentiary inquest hearing on May 20, 2008, that defendant Arthur H. Sulzer Associates, Inc. ("defendant" or "AHS") be awarded damages totaling $208,200 on its first, second and third counterclaims.[1] (*See* Doc. No. 69, Objections to the R&R, dated Apr. 6, 2010 ("Objections").) For the reasons set forth below,

---

[1] No objections have been filed with respect to Judge Orenstein's recommendations that the court decline to award damages on defendant's fourth counterclaim and deny defendant's request for punitive damages, litigation costs and attorneys' fees. (*See* R&R at 8-9.) The court finds no clear error as to those speficic recommendations, and thus they are adopted as the opinion of the court. *See Spillman v. City of Yonkers*, No. 07-CV-2164, 2010 U.S. Dist. LEXIS 49965, at *1-2 (S.D.N.Y. May 20, 2010) ("Where no timely objection has been made [to a Report and Recommendation], a district court need only satisfy itself there is no clear error on the face of the record.") (citation and internal quotation marks omitted); 28 U.S.C. § 636(b)(1)(A),(C).

plaintiff's objections are overruled and the R&R is adopted in its entirety.

## BACKGROUND

**A. Factual Background**

The court presumes the parties' familiarity with the factual and procedural history of this matter and will discuss the facts relevant to the instant ruling. *See generally*, *Gowanus Indus. Park v. Arthur H. Sulzer Assocs.*, No. 06-CV-105, 2008 U.S. Dist. LEXIS 26181 (E.D.N.Y. Apr. 1, 2008) (Johnson, J.)[2] (granting defendant's motions for (i) summary judgment dismissing plaintiff's claims, (ii) partial summary judgment with respect to defendant's counterclaims against plaintiff, and (iii) sanctions pursuant to Fed. R. Civ. P. 11 against plaintiff's counsel; referring the matter to Magistrate Judge Orenstein to recommend a damages award with respect to defendant's counterclaims, and to conduct an inquest or make any findings of fact relevant thereto).

Defendant is the owner of the barge ADA (the "barge" or "ADA"). In May 2000, defendant leased the ADA to CDS Marine Construction, LLC ("CDS") pursuant to a demise charter. (*See* Doc. No. 64, Defendant's Post-Inquest Memorandum, Ex. 1, Transcript of Damages Inquest held on May 20, 2008 ("Tr.") at

---

[2] This case was initially assigned to the Honorable Sterling Johnson, Jr. and subsequently reassigned to the undersigned on September 15, 2008.

17.) At the time of the demise charter in May 2000, the ADA was a deck barge and was hired out to CDS for $3,100 per month. (*Id.* at 17-18.) During the charter period, CDS installed a crane on the ADA. (*Id.* at 18.) Installation of a crane converted the ADA into a crane barge and increased its rental value to between $500 to $1,000 per day, or $21,000 per month, depending on the length of the charter. (*Id.* at 19, 51.) As of November 2002, CDS stopped remitting monthly hire payments to defendant as required by their demise charter. *Gowanus Indus. Park,* 2008 U.S. Dist. LEXIS 26181, at *3.

On or about April 23, 2003, unbeknownst to defendant, CDS entered into a contract with Gowanus to perform work on Gowanus's facility in Brooklyn and, to perform the work, transported the ADA to plaintiff's dock in Brooklyn. (Tr. at 85; R&R at 4.) *See Gowanus Indus. Park,* 2008 U.S. Dist. LEXIS 26181, at *3. Although CDS performed some work on plaintiff's facilities, it failed to complete the job and abandoned the worksite in August 2003, leaving the ADA on plaintiff's property. *Gowanus Indus. Park,* 2008 U.S. Dist. LEXIS 26181, at *2. CDS then filed for bankruptcy on or about October 16, 2003. *Id.*, at *3.

In January 2004, defendant learned of CDS's bankruptcy and discovered the ADA had been abandoned. *Id.*, at *4. On February 17, 2004, defendant, through its counsel, sent a letter

3

to Gowanus advising that defendant was the registered owner of the ADA and requesting to make arrangements for the barge's return to defendant. (Tr. at 22, 52.) *See Gowanus Indus. Park,* 2008 U.S. Dist. LEXIS 26181, at *4. Thereafter, on February 28, 2004, defendant's principal, Arthur H. Sulzer ("Sulzer"), telephoned Gowanus's principal, John Quadrozzi, Jr. ("Quadrozzi"), seeking return of the ADA and requesting information about its location. (*Id.* at 66.) Mr. Quadrozzi refused to disclose the ADA's location (*id.*) and instead advised Mr. Sulzer that Gowanus had incurred expenses in maintaining, repairing, and storing the ADA after CDS abandoned the barge at the worksite. *Gowanus Indus. Park,* 2008 U.S. Dist. LEXIS 26181, at *4. Significantly, in granting summary judgment to defendant on its counterclaims for lost rental income, the court found that plaintiff had "presented no legal justification for withholding" the ADA. *See Gowanus Indus. Park,* 2008 U.S. Dist. LEXIS 26181, at *14.

Thwarted in its attempt to recover the ADA, defendant acquired a similar crane barge, the Betsy. (Tr. at 20.) The Betsy became operational on January 28, 2005. (*Id.* at 20, 25-26.)

Defendant ultimately located the ADA and, on or about October 27, 2005, defendant resorted to self help by securing a tugboat, entering the waters surrounding Gowanus's dock and

4

recovering the ADA.  (*See* Tr. at 6, 33, 45.)  *See Gowanus Indus. Park,* 2008 U.S. Dist. LEXIS 26181, at *5-6.  Testimony during the May 20, 2008 inquest hearing established that the ADA was damaged while in plaintiff's control.  Specifically, the testimony established that plaintiff's acts or omissions caused the barge to sustain significant corrosion, rendering the vessel nearly unseaworthy at the time of its recovery by defendant. (*See* Tr. at 6, 11, 36-38, 40, 78-81; R&R at 7.)

**B. Recommended Recovery**

After considering the testimony of the witnesses, the inquest hearing exhibits, the parties' written submissions, and after resolving issues of credibility, Judge Orenstein issued a thorough and well-reasoned R&R recommending, *inter alia*, that defendant be awarded $208,200 on its first, second and third counterclaims.

As to defendant's first counterclaim for lost rental income, Judge Orenstein recommended that defendant be awarded damages from April 23, 2003 through February 27, 2004, "representing the time during which the abandoned ADA remained on Gowanus's property but before AHS sought the return of the barge."[3]  (R&R at 4; *see also* Doc. No. 3, Answer with

---

[3] Judge Orenstein explained that "[a]s as result of the court's grant of summary judgment on AHS's first counterclaim, it is the law of the case that Gowanus could and should have identified the barge as belonging to AHS and by failing to do so it

5

Counterclaims ("Answer") ¶¶ 36, 38-40.) Based on testimony that the ADA could have been chartered for "half" of this period (Tr. at 45), or 155 days, and upon Judge Orenstein's finding that defendant could have earned a daily rate of $600, the R&R recommends that defendant be awarded $93,000 in damages on its first counterclaim. (R&R at 5-6.)

On its second counterclaim, defendant seeks lost rental income from February 28, 2004, the date on which plaintiff learned that defendant owned the ADA, to October 27, 2005, when defendant recovered physical possession of the barge. (Answer ¶¶ 37, 41-43.) On this counterclaim, Judge Orenstein found that defendant was entitled to lost rental income at a $600 daily rate for half of the 335 days between February 28, 2004 to January 28, 2005, the date on which the Betsy became operational, because operation of the Betsy "effectively mitigated the loss of the ADA." (R&R at 6.) Accordingly, Judge Orenstein recommends that defendant be awarded $100,200 on its second counterclaim.

As to defendant's third counterclaim for expenses related to repairing damage that occurred as a result of plaintiff's negligent care of the ADA while the vessel was on plaintiff's property (Answer ¶¶ 44-45), Judge Orenstein found

---

unlawfully withheld the ADA from AHS." (R&R at 4.) It is undisputed that that plaintiff could have determined the identity of the ADA's owner. (*See* Tr. at 32.)

that defendant is entitled to recover for repair costs associated with corrosion damage to the barge. (R&R at 8.) Based upon testimony and invoices, Judge Orenstein found that it cost $15,000 to repair corrosion damage to the ADA and, accordingly, Judge Orenstein recommends that defendant be awarded $15,000 to compensate it for repair expenses necessitated by damaged caused to the ADA while in plaintiff's custody. (*Id.*)

## **DISCUSSION**

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court reviews *de novo* those portions of the report and recommendation to which timely "specific written objections" have been filed. Fed. R. Civ. P. 72(b)(2)-(3); *accord* 28 U.S.C. § 636(b)(1)(C).

Plaintiff objects to the imposition of damages for lost rental income, the daily rental rate imposed, and the recommendation that plaintiff be awarded repair costs. Based upon a *de novo* review of the record, the court overrules plaintiff's objections and adopts Judge Orenstein's recommendations.

First, plaintiff contends that defendant's claim for lost rental income is precluded by the existence of the valid

7

demise charter between defendant and CDS from May 2000 through the conclusion of CDS's bankruptcy proceedings in July 2005. (Objections at 2-3.) Plaintiff contends that because defendant relinquished custody and control of the ADA to CDS, defendant's claim for lost rental income should instead be made against CDS. (*Id.* at 3.) Plaintiff argues that just as the court held that any claim by Gowanus for CDS's use of its dock must proceed against CDS, not defendant, *see Gowanus Indus.* Park, 2008 U.S. Dist. LEXIS 26181 at *13, so too must defendant seek damages against CDS for the ADA's lost rental income. (Objections at 3.) Plaintiff is mistaken.

The existence of a valid demise charter between defendant and CDS is not relevant to defendant's claim against plaintiff for lost rental income. In granting summary judgment against plaintiff on defendant's first and second counterclaims, the court held that plaintiff is liable for lost rental income as a result of its unjustified withholding of the ADA from defendant. *Gowanus Indus.* Park, 2008 U.S. Dist. LEXIS 26181 at *13-14. The court also observed that plaintiff and defendant "never entered into any kind of contractual agreement . . . ." *Id.*, at *14. Thus, the court rejects plaintiff's attempt to re-litigate the determination of its liability for lost rental income.

Second, defendant contends that the evidence does not support a finding that defendant lost rental income at a rate of $600 per day. (Objections at 4.) Instead, plaintiff contends that defendant failed to establish that it was harmed by the lost use of the ADA and that, insofar as defendant was harmed, it lost between $3,100 and $3,500 per month. (*Id.*) Plaintiff further contends that any recovery should be barred "due to defendants [sic] unclean hands arising from its trespass committed in the seizure of the barge." (*Id.*) (citing *Andersen Consulting Bus. Unit Member Firms v. Andersen Worldwide Societe Coop.*, No. 98-CV-1030, 1998 WL 122590 (S.D.N.Y. Mar. 18, 1998) and *Pantoja v. Scott*, No. 96-CV-8593, 2001 WL 1313358 (S.D.N.Y. Oct. 26, 2001).)[4]

As an initial matter, plaintiff's contention that defendant is precluded from recovery of lost rental income due to its "trespass" upon plaintiff's property is meritless. Plaintiff wrongfully withheld defendant's barge and defendant mitigated its damages and recovered the ADA by resorting to self help. *Gowanus Indus.* Park, 2008 U.S. Dist. LEXIS 26181, at *14.

Similarly, plaintiff's contention that defendant failed to establish harm is without merit. Mr. Sulzer testified

---

[4] Plaintiff generally cites to these two cases without providing any pinpoint citation or parenthetical explanation. Neither case has any bearing on plaintiff's argument concerning the "unclean hands" doctrine or the law of trespass.

9

that defendant would have chartered the ADA for at least "half" of the time it remained in plaintiff's possession. (Tr. at 45.) Clearly, defendant was wrongfully deprived of the opportunity to rent out the ADA, thus establishing its entitlement to damages.

Plaintiff's contention that the evidence does not support a finding that defendant lost $600 per day in rental income is also without merit. Defendant was deprived of renting out the ADA as a crane barge, not a deck barge, and purchased another crane barge to mitigate its losses resulting from plaintiff's unjustified withholding of the ADA. Evidence presented at the inquest amply establishes that the ADA could have been chartered for $600 per day. (*See* Tr. 19, 26.)

Lastly, plaintiff argues that repair costs should be disallowed. (Objections at 5.) To this end, plaintiff contends that the ADA should have been dry-docked to prevent damage to the vessel and that the failure to dry-dock the ADA "likely caused or contributed to the corrosion" of the barge. (*Id.*) Plaintiff also argues that damages should be reduced by the costs of dry-docking and "routine maintenance which were not performed." (*Id.*)

Again, plaintiff's objections are without merit. Initially, the court notes that Judge Orenstein recommends that defendant not be awarded damages for dry-docking and "routine maintenance" because such costs are "not related to any damage

suffered by the ADA." (R&R at 8.)  Further, Judge Orenstein properly found, based upon the credible evidence, that plaintiff caused the ADA to be corroded to the point of near unseaworthiness.  (*Id.* at 7-8.)  Thus, the court finds ample support for an award of $15,000 to compensate defendant for repair expenses associated with corrosion damage caused by plaintiff while the ADA was in its custody and care.

## **CONCLUSION**

For the foregoing reasons, plaintiff's objections to Judge Orenstein's March 24, 2010 Report and Recommendation are overruled and defendant is awarded damages in the total amount of $208,200, consisting of $93,000 in lost rental income on defendant's first counterclaim, $100,200 in lost rental income on its second counterclaim, and $15,000 in repair costs on its third counterclaim.  The Clerk of the Court is respectfully directed to enter judgment in favor of defendant in accordance with this Order and to close this case.

SO ORDERED.

Dated:   Brooklyn, New York
         June 23, 2010

                                               /s/
                                     KIYO A. MATSUMOTO
                                     United States District Judge
                                     Eastern District of New York